## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA -MIAMI DIVISION

_____

THE HAITIAN DIASPORA
POLITICAL ACTION COMMITTEE
(HDPAC)
THE OFFICE OF THE HAITIAN               Case No.:
DIASPORA (ODIHA)


          Plaintiffs,

                               COMPLAINT FOR
-Against-                                MONEY DAMAGES &
                               INJUNCTIVE RELIEF

DONALD J. TRUMP
JAMES DAVID VANCE                        **JURY TRIAL DEMANDED**
DONALD TRUMP JR.
ELON MUSK
X
DAVE YOST
BERNIE MORENO
STATE OF OHIO
CLAY HIGGINS

          Defendants.
_____/

## I.  INTRODUCTION

Plaintiffs, The Haitian Diaspora Political Action Committee (HDPAC) and The Office of The Haitian Diaspora (ODIHA) (The "Plaintiffs"), on behalf their members who are Haitian Immigrants residing in Springfield, Ohio, and other localities in the United States, through undersigned counsel, the Law Offices of Ralph Francois, P.C., respectfully submits Plaintiff's Complaint. The allegations contained herein are made upon personal knowledge and information, and upon belief as to all other matters, based on, inter alia, an investigation conducted by counsel which included, among other things, a review of the defendants' public statements, news reports, and statements from other witnesses, documents, review of

documents from the Defendants, and the Defendants' actions and communication about Plaintiffs and its members.   Plaintiffs believe that substantial evidentiary support for the allegations set forth herein will be unearthed after a reasonable opportunity for discovery.

## II.   NATURE OF THE LAWSUIT

1. This is a lawsuit against Defendants, DONALD J. TRUMP, JOHN DAVID VINCE, ELON MUSK, and X for violation of the Equal Protection Clause of the United States Constitution, defamation, defamation *per se*, slander, aiding and abetting violence, negligent infliction of emotional distress, intentional infliction of emotional distress, hate speech, inciting violence, civil conspiracy to violate the civil rights of Haitian Migrants.

2. No one in this country is above the law, not even the President or former President of the United States. Nobody is entitled or has the right to defame an entire group of people, putting their lives in danger, uprooting their daily lives by publicly spurring lies and falsehoods against them. Falsehoods that the Defendants knew and were told was false but continued to repeat for political gains. This is exactly what the Defendants have done to the Plaintiffs.

3. Defendant Donald J. Trump is currently running for president of the United States as the Republican nominee.  This Defendant has a habit of making defamatory statements against others even after being told that those statement are untrue and defamatory.[1] Defendant continues to make those statements in total disregard for the safety of those he defamed.

4. Defendant, James David Vance, *aka* JD Vince, is currently running for Vice-President of the United States as a Republican. This defendant was the ringleader who started the falsehoods against Haitian Migrants, stealing and consuming people's pets in Springfield, Ohio.

---

[1] https://www.thecut.com/article/donald-trump-assault-e-jean-carroll-other-hideous-men.html. Hideous Men ("Donald Trump assaulted me in a Bergdorf Goodman dressing room 23 years ago. But he's not alone on the list of awful men in my life.") E Jean Caroll.

5. United States Senator JD Vance is former President Donald Trump's 2024 running mate, he continues to fuel the firestorm surrounding Springfield, Ohio, with false claims about Haitian migrants.

6. Vance first spread unsubstantiated rumors of Haitian migrants eating pets on Sept. 9, 2024, despite one of his staffers being informed that same day by a city official that such comments were "baseless."[2]

7. Since then, he's continued to attack the Haitian population there as "illegal" despite their legal protected status and accused them of spreading infectious diseases in the community.

8. Defendants, Donald J. Trump during his presidential debate against Vice-President Kamala Harris on September 12, 2024, on ABC news stated that "Immigrants are eating the dogs and the cats, … eating the pets of the people that live there." When the moderator, Journalist David Mui told Trump that the manager of the City of Springfield and the police department released a statement saying that there are no reports or complaints from anyone that Haitian migrants were eating their dogs and their cats, Trump continue to push the lie.

9. The lie spread by Donald Trump and JD Vince have caused untold damages not only to the Haitian migrants whose lives have been endangered but as well to the city of Springfield, Ohio, whose mayor has received dozens of threats of violence, causing schools, churches, and other places of business to close.[3] The lives of Haitian migrants who live in Springfield and other

---

[2]   https://www.pbs.org/newshour/politics/springfield-facing-threats-from-overseas-after-trumps-lies-about-haitians-ohio-governors-office-says. "Ohio stationed state police at Springfield schools Tuesday in response to a rash of bomb threats — the vast majority that officials said came from overseas —- after former President Donald Trump and his running mate, Ohio Sen. JD Vance falsely said legal Haitian immigrants in the small city were eating dogs and cats.  Schools, government buildings and elected officials' homes in Springfield were among the targets of more than 30 hoax threats made last week that forced evacuations and closures. Two more schools had to be evacuated on Monday. Republican Gov. Mike DeWine said that a foreign actor was largely responsible, but he declined to name the country."

[3]   "The vast majority of the bomb threats came from foreign countries. Not 100%, but it's the vast majority," Dan Tierney, DeWine's spokesperson, said Tuesday.' https://time.com/7021289/bomb-threats-springfield-ohio-trump-haitian-pets/. he Springfield City School District in Ohio closed one middle school and evacuated two elementary schools on Friday due to bomb threats as former

places in the United States have been unnecessarily endangered by hate speech. Haitian American children from Florida to California have been harassed by others who asked them whether they eat dogs and cats.[4]

10. Haitian migrants residing in Springfield, Ohio, shared with ABC News their harrowing experiences of living in constant fear, expressing deep concerns about their safety that prevent them from venturing outside their homes.[5]

11. In a town of more than 58,000 residents, threats of bombings and shootings led to the closure of city buildings and schools for several days. Wittenberg University cancelled all activities on Sunday and classes on Monday as a precautionary measure.[6]

---

President Donald Trump and his Republican allies continue to make inflammatory and unfounded claims about the city's Haitian immigrant community.  The incident marked the second consecutive day of disruptions for Springfield, following similar threats that had prompted the evacuation of city hall on Thursday. It was revealed Friday that Thursday's bomb threat in Springfield used hateful language against the city's immigrant population.

[4] https://www.usatoday.com/story/opinion/columnist/2024/09/18/trump-vance-lies-haitian-immigrants-threats safety/75252573007/Republican vice presidential nominee JD Vance this month pushed a false narrative in the news media and then claimed it was the news media that was pushing false narratives. Make it make sense.  During last week's presidential debate, former President Donald Trump repeated Vance's claim that Haitian immigrants are eating dogs and cats in Springfield, Ohio. The falsehood sent the internet into a frenzy and led to threats of violence in Springfield. A wave of bomb threats aimed at schools, hospitals and government offices left people in fear for their lives. Two universities moved to online classes to protect students and staff after receiving threats, including one about a planned mass shooting.

[5] https://www.pbs.org/newshour/classroom/daily-news-lessons/2024/09/how-life-in-springfield-has-been-disrupted-by-lies-about-its-haitian-community.

[6] https://www.cbsnews.com/news/springfield-ohio-security-false-claims-about-haitian-immigrants-bomb-threats/ The city of Springfield, Ohio, is stepping up security as viral, false claims about Haitian immigrants stealing and eating pets continue to circulate after being amplified by former President Donald Trump and his running mate, Ohio Sen. JD Vance.  Gov. Mike DeWine announced Monday afternoon he was sending three dozen state troopers to provide added security to schools in the city after a "series of unfounded bomb threats."  "Look, parents are scared, and when parents are scared, we need to react. And I don't blame them," DeWine said in an interview with CBS News. The Republican governor said in a statement that many of the threats "are coming in from overseas" from people "who want to fuel the current discord surrounding Springfield."  DeWine has pushed back against the false claims about immigrants, saying that he trusts city officials who say they have not received any credible reports of such conduct.

James Fleurijean, a Haitian Community Help & Support Center member, stated that the continual spread of false and divisive statements from prominent politicians was fostering an environment of fear.

12. Ohio officials, including Republican Gov. Mike DeWine, have pushed back on some of Vance's remarks as they deal with the fallout of threats and other security issues.

13. Springfield Mayor Rob Rue recently added temporary emergency powers to ensure the safety of residents amid risks from the spotlight on the area.

14. Even after being told not once, or twice, but consistently in the last two weeks that the statement of "Haitian migrants eating people's cats and dogs" are false, the Defendants continue to spread the hateful lies.

15. The Defendants' false statements and lies about Haitian migrants are not protected speeches. They are hate speeches, designed to defame, and put the lives of Haitian migrants in danger.

16. On or about September 19, 2024, Congressman Clay Higgins representing the 3rd district in Louisiana posted an incendiary remark about Haitian Americans. He posted the following in this X personal account: ""Lol. These Haitians are wild. Eating pets, vudu, nastiest country in the western hemisphere, cults, slapstick gangsters… but damned if they don't feel all sophisticated now, filing charges against our President and VP," Higgins wrote on his official account on X. "All these thugs better get their mind right and their asses out of our country before January 20th."

17. Defendant Higgins statement amplified the lies and the defamatory statement, hateful speech, the denigrating of Haitian Immigrants.

### III.  THE PARTIES

18. The Plaintiff, The Haitian Diaspora Political Action Committee, is a 527 PAC with members of Haitian descent residing in several states in the United States. Plaintiff is

incorporated in the State of Washington and registered in Florida, New York and other states. Plaintiff is suing on behalf of its members who were defamed by the Defendants.

19.  Plaintiff, The Office of the Haitian Diaspora, known by its French acronym (ODIHA) is a Haitian membership not-for-profit 501 (c)(3) organizations with members around the world. The organization represents members of the Haitian diaspora including the Haitian migrants who reside in Springfield, Ohio.

20. Defendant, Donald J. Trump, is a Florida resident and currently running as the Republican Nominee for President of the United States.

21. Defendant JD Vance is an Ohio resident, and currently running for Vice-President and running mate of Defendant Trump.

22.  Defendant Elon Musk is a resident of California, and all times subject to this lawsuit, Defendant is the owner and Chief Executive Officer of X, a social media platform formerly known as Twitter.

23.  Defendant X, formerly known as Twitter is an American company that runs a social media platform that allowed members to post their statements. The named Defendants have used X to spread their lies and hateful speeches against Haitian migrants.

24. Defendant, Donald Trump Jr. is a New York resident, and the son of Defendant Donald Trump. At all times hereinafter mentioned, Defendant made several defamatory remarks about Plaintiffs with the knowledge those remarks, and statements were false, hateful and will cause harms to the Plaintiffs.

25.  Defendant, Dave  Yost is a resident of Ohio and currently serving as the attorney General of the State of Ohio. At all times hereinafter mentioned, Defendant continues to promote and spread the hateful, defamatory statement that "Haitian immigrants are eating cats and dogs", even after Defendant had been told that the rumor is false and defamatory.  This Defendant is being sued in his individual capacity.

26. Defendant, Bernie Moreno is a resident of Ohio, and currently running for United States senate as a Republican nominee. At all times hereinafter mentioned, the Defendant continues to spread false, hateful and defamatory statement about Plaintiffs that "Haitian migrants are eating the people's cats and dogs".

27. Defendant, Clay Higgins is a sitting Congressman representing Louisiana's 3rd District in the U.S. House of Representatives. Congressman Higgins is widely regarded as one of the most conservative members of Congress and is a core member of the House Freedom Caucus. He serves on the House Homeland Security Committee and as Chairman of the Border Security and Enforcement Subcommittee.

28. At all times hereinafter mentioned, Congressman Higgins participated in the conspiracy to defamed Haitian Immigrants, and on September 20, 2024 the Congressman posted the following statement on Defendant X social platform:

**"Lol. These Haitians are wild. Eating pets, vudu, nastiest country in the western hemisphere, cults, slapstick gangsters… but damned if they don't feel all sophisticated now, filing charges against our President and VP," Higgins wrote on his official account on X. "All these thugs better get their mind right and their asses out of our country before January 20th."**

## IV.   JURISDICTION & VENUE

29. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs and there is complete diversity of citizenship between Plaintiffs and the Defendants.

30. This Court has jurisdiction over Plaintiffs' related state and common law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

31. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because the Plaintiffs reside in this District and substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## V.  FACTUAL ALLEGATIONS

### A. THE BIDEN ADMINISTRATION HUMANITARIAN PAROLE

32.  On January 5, 2023, the Biden administration announced its intent to provide "safe and orderly pathways to the United States" for up to 300,000 nationals of Cuba, Haiti, Nicaragua, and Venezuela.

33. The new program, formally known as the Processes for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV), allows certain people from these four countries who have a sponsor in the U.S. and who pass a background check to come to the U.S. for a period of two years to live and work lawfully, using a legal mechanism known as "humanitarian parole."

34.  The creation of this new parole program, however, was coupled with restricted access to asylum at the U.S./Mexico border for migrants from Cuba, Haiti, Nicaragua, and Venezuela. Starting in January 2023, the government of Mexico agreed to allow the U.S. to expel up to 30,000 migrants from those countries to Mexico each month—preventing them from requesting asylum under U.S. immigration law.

35.  With the expiration of the Title 42 order in May 2023, the U.S. announced that it would formally deport some migrants from these countries to Mexico instead of to their home countries.

36.  Migrants are ineligible for the parole program if they crossed without authorization into Panama (following the most common route to the United States), Mexico, or the United States after the relevant parole program was announced October 19, 2022, 19, 2022, for Venezuelan nationals, and January 9, 2023 for Cubans, Haitians, and Nicaraguans.

37. As of April 2023, Cubans and Haitians are also ineligible if they are interdicted at sea while attempting to cross the Caribbean to the U.S. without authorization.

38. This "carrot and stick" approach, pairing expanded parole with restricted access to asylum, was first adopted by the Biden administration in October 2022 toward Venezuelans, with 24,000 parole slots initially available each month in exchange for the government of Mexico permitting the Department of Homeland Security (DHS) to expel 24,000 Venezuelans to Mexico monthly.

39. With the expansion of the program to Cubans, Haitians, and Nicaraguans on January 9, 30,000 monthly slots are available in total, across all four countries.

40. In the first several months of the program, United States Citizenship and Immigration Services (USCIS) received 1.5 million applications—enough to fill the monthly CHNV allocation for more than four years.

41. In response to the overwhelming demand, USCIS began to fill half the monthly slots by randomly selecting pending applications via lottery, while the other half are selected based on the date they were received.

42. As a result of the above-described program, thousands of Haitian immigrants from Haiti were legally admitted to the United States. Upon arrival, these migrants received a social security number and a permit to work legally in the United States.

43. From 2020-2024, Springfield population has grown about 25% in part due to the arrival of Haitian immigrants.

44. Between 12,000 and 15,000 Haitian immigrants are living in Clark County, which includes Springfield, according to estimate on the City's website. Of that group, an estimated 10,000-12,000 are Haitian, according to a July presentation   from the county's health commissioner, who cited data from school and social services officials.

45.  The 2020 Census estimated about 60,000 people were living in Springfield, and 2022 data from the American Community Survey indicated about 2% of the City's population was born outside the US.

46.  Haitian Immigrants have chosen to move and live in Springfield due to its low cost of living and available work, according to a city website, which notes that "no government entity is responsible for the influx of Haitians into Clark County."

47. Officials and Springfield residents who've spoken to several media organizations including CNN say employment opportunities and word of mouth drew an influx of Haitian migrants to the city of Springfield, Ohio.

### B. A HISTORY OF ANTI-HATIAN STATEMENTS MADE BY DONALD TRUMP THAT INFLUENCED GOVERNMENTAL ACTORS AND AGENCIES RESULTING IN A FEDERAL INJUNCTION BASED ON EQUAL PROTECTION CONCERNS

48.  In *Saget v. Trump*, 375 F. Supp. 3d 280, 371-74 (E.D.N.Y. 2019), the court found that numerous public statements made by Donald Trump, both when he was a presidential candidate and during his time in office reflect racial animus against Haitian immigrants, and that this animus likely influenced the decision to terminate Temporary Protected Status (TPS) for Haiti.

49.  The Court cited multiple public statements made by President Trump reflecting hostility towards Haitian immigrants. For instance, during a June 2017 meeting, Donald Trump allegedly stated that "Haitians all have AIDS" upon learning that 15,000 Haitians had received visas to enter the United States that year. *Saget* at 372.  Additionally, during a discussion of a draft immigration plan in January 2018, Donald Trump questioned, "Why are we having all these people from shithole countries come here?" in reference to Haiti and other predominantly non-white countries. *Saget* at 371.

50.  The Court found that other officials in the Trump administration also made disparaging remarks. In an email, White House official Gene Hamilton wrote, "African countries are toast" and "Haiti is up next". Chief of Staff John Kelly also stated that Haitians were "welfare

recipients". The Court found that these comments were consistent with the broader administration's agenda to reduce the presence of non-white immigrants in the United States. *Saget* at 371-372.

51.   The Court determined that this evidence showed that Acting Secretary of Homeland Security Elaine Duke faced political pressure to align her decision with the White House's agenda. Notes from Secretary Duke indicate that her decision was influenced by an "America First" strategy that aimed to end TPS for Haiti and other non-white countries. She acknowledged this influence in her own handwritten notes, writing that the termination of TPS was aligned with the administration's broader goals, even though she expressed doubts about whether ending TPS was in the nation's best interest. *Saget* at 360.

52.   Similarly, the Court found that internal communications reveal that the decision to terminate TPS was predetermined, and evidence was manipulated to fit this agenda. For instance, DHS officials were instructed to draft notices suggesting that Haiti's TPS was likely to end, even though conditions on the ground had not significantly changed. This manipulation of the review process indicates that the decision was driven by political motives, rather than an objective evaluation of country conditions. *Saget* at 347.

53.   Finally, the Court determined that these findings supported the plaintiffs' argument that discriminatory animus, particularly against Haitian nationals, was a significant motivating factor in the decision to terminate Haiti's TPS, and that this animus came from both the President and other key White House officials, and it enjoined the defendants there from terminating the TPS status for Haiti, based on its conclusions that the plaintiffs were likely to succeed on and have raised serious questions going to the merits of their equal protection claim. *Saget* at 379.

### C. THE SPREAD OF HATEFUL, RACIST AND DANGEROUS LIES ABOUT HAITIAN IMMIGRANTS EATING CATS AND DOGS

54.   President Trump's and his confederates' ongoing animus against Haitians continued nevertheless and fueled ongoing nationwide ongoing animus against Haitians.

55.   On or about September 1, 2024, a baseless rumor about Haitian immigrants in Springfield Ohio started in conservative social media platform including X, formerly known as Twitter, that a woman who is not Haitian was accused of killing and eating a cat.[7]

56.   On September 9, 2024, Defendant J.D. Vance was told by Springfield officials that a racially charged rumor that he, Vance had been amplifying was false as the Wall Street Journal reported. Despite a wave of death and bomb threats directed at the community, Vance, a U.S. senator representing the city, hasn't backed off.

57.   Vance, who is the Republican vice-presidential nominee, has said that he's trying to highlight what he claims are failures by his political opponents to enforce immigration laws.

58.   But the multitude of falsehoods about Haitian immigrants told by Vance and his running mate, former President Donald Trump, have an ugly history and designed to fuel racist violence said an expert said.

59.   "Spreading these racist lies on a national stage has seriously disrupted civic life in the Springfield community," said Lindsay Schubiner, program director of Western States

---

[7]   https://www.wpxi.com/news/local/woman-accused-killing-eating-cat-ohio-is-not-an-immigrant-was-born-canton/CNKQDHSCUVF75HKKPODXURQSXQ/ .   Former President Donald Trump also brought up claims immigrants were eating pets in Springfield during Tuesday's presidential debate.  Ferrell is not Haitian. She was born in Ohio and graduated from high school in Canton, according to public records and newspaper reports the Associated Press reviewed.  Springfield city leaders shared the following statement with **WHIO**: ("In response to recent rumors alleging criminal activity by the immigrant population in our city, we wish to clarify that there have been no credible reports or specific claims of pets being harmed, injured or abused by individuals within the immigrant community. Additionally, there have been no verified instances of immigrants engaging in illegal activities such as squatting or littering in front of residents' homes. Furthermore, no reports have been made regarding members of the immigrant community deliberately disrupting traffic.") Ferrell is charged with prohibitions concerning companion animals, cruelty to animals and disorderly conduct. She was booked into the Stark County, Ohio jail.

Strategies, a nonpartisan advocacy group which seeks to counter white nationalist and paramilitary organizations, among other aims. "It's not surprising to hear that (Vance) knew these stories were false and continued to spread them with enormously dangerous consequences."

60.   On September 9, after Defendant Vance had already promoted claims that Haitian immigrants were stealing and eating neighbors' pets as well as poaching local wildlife, a Vance staffer called Springfield City Hall to ask if there was any truth to the rumors.

61.  "He asked point-blank, 'Are the rumors true of pets being taken and eaten?'" City Manager Bryan Heck told the Wall Street Journal. "I told him no. There was no verifiable evidence or reports to show this was true. I told them these claims were baseless." [8]

62. The following morning, Vance, undeterred, again fanned the flames stating "In the last several weeks, my office has received many inquiries from actual residents of Springfield who've said their neighbors' pets or local wildlife were abducted by Haitian migrants," he posted on X at 9:58 a.m. "It's possible, of course, that all of these rumors will turn out to be false."

63. Six minutes later, he followed up. "In short, don't let the cry-babies in the media dissuade you, fellow patriots," the man who would be second in line to the presidency wrote. "Keep the cat memes flowing."

64.   During that evening's presidential debate, Vice President Kamala Harris taunted Trump by saying that during many of his rallies, the audience starts to stream out long before he finishes speaking. Trump took the bait and went on a disjointed tirade that ended with him echoing Vance's false claims, stating the following:  "They're eating the dogs, the people that came in,

---

[8]   See e.g., https://truthout.org/articles/springfield-city-manager-told-vance-staffers-claims-against-haitians-were-false/

they're eating the cats," Trump said. "They're eating the pets of the people that live there, and this is what's happening in our country, and it's a shame."

65.  A barrage of threats started the next morning — death threats against Springfield city officials and at least 36 bomb threats so far against schools, government buildings and health care facilities.

66.  Some of them explicitly cited the presence of so many Haitians in the community. Racist fliers, which were attributed to a Kentucky Ku Klux Klan group, also have been circulated, per multiple media reports as shown below:



67.  Racist lies about immigrants eating pets are not new. Forbes on Sunday reported that 40 years ago, it was Asian refugees who were blamed for supposedly eating dogs. A neo Nazi group pushed the latest version involving Haitians in Springfield before Trump did, but even

after the Defendants were told the rumors were false, hurtful, racist and disturbing, and defamatory, the Defendants continued to repeat these rumors.

68.  Despite the threats, over the days following the debate, Defendants Trump, Vance, Yost, Moreno and Trump Jr.,  continued to promote the rumors with devastating consequences and great economic  and emotional lost to Plaintiff.

69. Amid the threats, Springfield Republican Mayor Rob Rue's plea for elected officials to stop repeating debunked conspiracy theories — Republican Lt. Gov. Jon Husted made a joke about the situation.

70.  In April, Defendant Donald Trump called undocumented immigrants "animals."  The week after the debate,  he stated that he'd deport the Haitians who are in Springfield.

71. Despite what Trump said, the vast majority of the Haitians in Springfield are there legally. Even so, Moreno echoed the call for deportation.

72. All the rhetoric is scaring people of Haitian descent around the country, the New York Times reported Friday. Painting Haitian immigrants as pet-eating monsters recalls earlier Trump falsehoods, such as when in 2017, he told White House staff that Haitians "all have AIDS," the story said.

73. In addition to eating pets, Vance also has been claiming that Haitians brought disease to Springfield. But the Wall Street Journal reported that according to the Clark County Health Department, cases of infectious disease are at their lowest point in nearly a decade. Such targeting of a minority group has contributed to several racist massacres in the United States.

74. "J.D. Vance has elevated racist conspiracy theories about Haitian immigrants with no basis in fact," Schubiner of Western States Strategies said. "This is a tactic we see anti-democracy actors use again and again: bigoted fear mongering to build political power."

75.  When former President Donald Trump told 67 million Americans  during the presidential debate of that immigrants in Springfield, Ohio, were eating people's pets, he was repeating a racist conspiracy theory that was years in the making — if not even longer.

76. Since 2020, thousands of Haitian immigrants moved to the Rust Belt town in southwestern Ohio to take advantage of new manufacturing jobs there.

77.  That animosity morphed into something entirely different in the days leading up to a presidential debate thanks to right-wing social media accounts, which seized on baseless rumors about immigrants in Springfield — conflated with a story about a Canton, Ohio, woman, who is not Haitian and was accused of killing and eating a cat — to create an online frenzy.

78. Since then, members of Springfield's Haitian community tell reporters they are nervous about leaving their homes as the town remains on high alert after a series of bomb threats, while Republican vice presidential nominee JD Vance and others continue to double down on the made-up story.

79.  One of the earliest tweets that was posted on X  was on  September 6 stating something to the effect that  "*my friend's neighbor's sister's cousin or whatever got her cat kidnapped and she found it outside a house where Haitians live*."

80. With this posted statement was a picture of a man holding a goose, and said that ducks and pets are disappearing in Springfield, Ohio, a place where there are a lot of Haitian migrants.

81. Then on September 8, Charlie Kirk posted the same screenshot from Facebook and Defendant Elon Musk replied to it, saying, apparently people's cats are being eaten.

82.  The original End Wokeness post right now has 4.9 million views. Musk's reply to Charlie Kirk has 1.6 million views.

83. Charlie Kirk's post was viewed at least 4 million times. This kind of left the ecosystem of right-wing Twitter partially because Elon Musk got involved.

84. Since then, several Ohio elected officials have said that the story is false, and that there are no credible reports that Haitian immigrants are eating people's eat and dogs, but the above Defendants continued to repeat, spread and push the false defamatory statement.

85. Nearly two weeks after the story had been debunked to be baseless and without merit, Defendant Donald J. Trump repeated the statement several times during his campaign.

86. Defendant Donald Trump Jr. repeated the same false and defamatory statement during a television interview with Fox News, and continue to post on X and other social media platform.

87. Defendants, Yost, Moreno, Musk continue to make defamatory statement about Haitian immigrants even after being told many times that the statement is false, defamatory, racist, hateful and incite violence, ridicule against people of Haitian descent.

## VI. CAUSES OF ACTIONS

### Count One
### Defamation Per se (Against All Defendants)

88. Plaintiffs incorporate the allegations set forth in ¶¶ 28-83 as though fully set forth herein.

89. The Defendants, by their actions, have engaged in defamation per se against the Plaintiffs, specifically Haitian migrants and their communities, by knowingly publishing false and defamatory statements.

90. These statements, including the baseless accusations that Haitian immigrants in Springfield, Ohio, were eating people's pets, were made publicly and widely disseminated through media channels, including during televised debates and social media platforms such as X (formerly Twitter).

91. The falsehoods were not only baseless but were intended to harm the reputation and integrity of the Haitian migrants and their community.

92. Defendants knew or should have known that such statements were untrue. Despite this knowledge, Defendants continued to spread these false narratives, subjecting Plaintiffs to public ridicule, harassment, and danger.

93. The nature of the defamatory statements directly attacked the character and morality of the Haitian community, labeling them as criminals engaging in inhumane and culturally abhorrent behaviors.

94. Because these defamatory statements impugn the Plaintiffs' integrity and accuse them of actions that are criminal and morally reprehensible, they are considered defamatory per se under the law.

95. The statements have caused significant harm to the Plaintiffs' personal and professional lives, inciting violence, threats, and fear within the Haitian community and damaging their standing in society.

96. Plaintiffs seek damages, both compensatory and punitive, as well as injunctive relief to prevent further harm.

## Count Two
## Defamation (Against All Defendants)

97. Plaintiffs incorporate the allegations set forth in ¶¶ 28-83 as though fully set forth herein.

98. The Defendants, through their public statements, both verbal and written, have defamed the Plaintiffs by making knowingly false, harmful, and malicious statements.

99. Specifically, Defendants spread unsubstantiated claims that Haitian migrants residing in Springfield, Ohio, were engaging in criminal behavior, such as stealing and consuming household pets.

100. These statements were made despite clear evidence that the claims were false, as communicated to Defendants by local officials and other credible sources.

101. The defamatory statements were broadcast through various media, including social media platforms like X (formerly Twitter), television interviews, and public speeches.

102. These statements were widely viewed and shared, significantly damaging the reputation of the Plaintiffs, particularly members of the Haitian community. Defendants' repetition of these false claims, even after being informed of their falsity, demonstrates a reckless disregard for the truth and an intent to harm Plaintiffs' reputations.

103. As a direct and proximate result of these defamatory statements, the Plaintiffs have suffered considerable harm, including emotional distress, public ridicule, and threats of violence.

104. The statements have not only defamed the Haitian migrants in Springfield but also tarnished the broader Haitian community's reputation across the United States.

105. Plaintiffs seek both compensatory and punitive damages for the harm caused to their reputations, standing, and emotional well-being as a result of Defendants' wrongful and defamatory conduct.

## Count Three
## Aiding and Abetting Violence (Against All Defendants)

106. Plaintiffs incorporate the allegations set forth in ¶¶ 28-83 as though fully set forth herein.

107. The Defendants, by their actions and public statements, have knowingly aided and abetted violence directed toward Haitian migrants in Springfield, Ohio, and other Haitian communities across the United States.

108. By spreading false, inflammatory, and racist statements accusing Haitian migrants of criminal behavior—such as consuming household pets—Defendants knowingly incited an environment of hostility and violence.

109. Despite being informed by officials that these claims were false, Defendants continued to promote these baseless accusations, stoking fear, hatred, and anger against Plaintiffs.

110. As a result of Defendants' reckless and malicious conduct, there have been numerous reports of threats, harassment, and acts of violence against members of the Haitian community.

111. Schools, businesses, and public institutions in Springfield have been forced to close due to bomb threats and security concerns directly linked to the false statements spread by Defendants.

112. Defendants' actions, in continuing to repeat these falsehoods, provided implicit encouragement and support to individuals or groups who sought to harm the Plaintiffs and their community through acts of violence and intimidation.

113. The Defendants, through their high-profile platforms and repeated false claims, have created an environment where violence against Haitian migrants is not only condoned but actively encouraged.

114. This constitutes aiding and abetting the violent actions taken against the Plaintiffs. The harm inflicted upon

115. Plaintiffs include both physical and emotional distress, as well as significant disruptions to their daily lives and well-being. Plaintiffs seek compensatory and punitive damages for the suffering and harm caused, and injunctive relief to prevent further incitement of violence.

## Count Four
## Slander (Against All Defendants)

116. Plaintiffs incorporate the allegations set forth in ¶¶ 28-83 as though fully set forth herein.

117. Defendants, through their public statements and repeated verbal accusations, have committed slander against the Plaintiffs by making false and damaging statements about Haitian migrants.

118. Specifically, Defendants have falsely claimed that Haitian migrants in Springfield, Ohio, have been engaging in heinous acts, such as stealing and consuming household pets, despite knowing that these statements were entirely untrue.

119. These slanderous remarks were made in public forums, including television appearances, debates, and other speaking engagements, ensuring that they were widely disseminated to a large audience.

120. The statements made by Defendants were not only false but were uttered with the intent to harm the reputation and standing of Haitian migrants in their communities.

121. Despite being informed by reliable sources, including local officials, that no evidence supported these claims, Defendants persisted in repeating them, demonstrating a reckless disregard for the truth and an intent to inflict harm on Plaintiffs.

122. The nature of the slanderous statements is particularly egregious, as they accuse Plaintiffs of morally reprehensible behavior, causing public outrage and increasing hostility toward the Haitian community.

123. As a direct result of Defendants' slanderous statements, Plaintiffs have suffered significant harm, including damage to their reputations, emotional distress, and threats to their safety.

124. The Haitian migrant community in Springfield, and across the United States, has been subjected to public ridicule, harassment, and violent threats, all stemming from the false accusations perpetuated by Defendants.

125. Plaintiffs seek compensatory and punitive damages for the harm caused by Defendants' slanderous conduct and request injunctive relief to prevent further dissemination of false statements.

### Count Five
### Negligent Infliction of Emotional Distress (Against All Defendants)

126. Plaintiffs incorporate the allegations set forth in ¶¶ 28-83 as though fully set forth herein.

127. The Defendants, through their reckless and negligent conduct, have caused Plaintiffs severe emotional distress.

128. By repeatedly disseminating false and inflammatory claims about Haitian migrants—specifically accusing them of stealing and consuming pets—Defendants created an environment of fear and hostility.

129. These false statements were made without regard to their veracity, despite being informed by credible sources that the claims were unfounded. Defendants' negligent actions directly contributed to the widespread dissemination of harmful, untruthful statements that caused significant distress to the Plaintiffs.

130. The Haitian migrant community, particularly in Springfield, Ohio, has been subjected to constant threats of violence, public harassment, and racial hostility as a direct result of Defendants' negligent actions.

131. The emotional impact on Plaintiffs has been profound, with many experiencing heightened fear for their personal safety and the safety of their families.

132. Plaintiffs have also been forced to limit their activities, refrain from leaving their homes, and endure the stress and anxiety that arises from being unfairly targeted by hateful rhetoric.

133. Defendants, by failing to exercise reasonable care in verifying the truth of their statements, negligently inflicted emotional harm on the Plaintiffs.

134. As a proximate result of Defendants' negligent conduct, Plaintiffs have suffered significant emotional distress, including anxiety, fear, and emotional trauma. Defendants' actions have created an unsafe and hostile environment for Haitian migrants, amplifying their distress and forcing them to live in constant fear of harm.

135. Plaintiffs seek compensatory damages for the emotional and psychological harm caused by Defendants' negligent infliction of emotional distress, and further request injunctive relief to prevent Defendants from continuing to cause harm through the spread of false and defamatory statements.

## Count Six
## Intentional Infliction of Emotional Distress (Against All Defendants)

136. Plaintiffs incorporate the allegations set forth in ¶¶ 28-83 as though fully set forth herein.

137. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

138. The Defendants, through their intentional, extreme, and outrageous conduct, have inflicted severe emotional distress upon the Plaintiffs.

139. Defendants knowingly and purposefully spread false and inflammatory statements, accusing Haitian migrants of heinous acts such as stealing and consuming pets in Springfield, Ohio.

140. These statements were made with full awareness of their falsity, and with the intent to incite hatred, fear, and public outrage against the Plaintiffs.

141. Despite repeated warnings from credible sources, including city officials, that these accusations were baseless, Defendants continued to disseminate these harmful lies.

142. The conduct of Defendants was not only reckless but deliberate in its attempt to inflict emotional harm on the Plaintiffs and their community.

143. By continuing to promote these falsehoods in national debates, media interviews, and on social media, Defendants acted with malice, fully aware that their statements would subject the Plaintiffs to public ridicule, harassment, and threats of violence.

144. The intentional spreading of such damaging and racially charged lies was designed to provoke fear and anxiety among the Haitian migrant community, causing them to feel unsafe in their homes and communities.

145. As a direct result of Defendants' intentional infliction of emotional distress, the Plaintiffs have suffered severe emotional harm, including anxiety, fear for their safety, depression, and psychological trauma.

146. The Plaintiffs have been forced to live in constant fear, avoid public spaces, and endure the stress of being unfairly targeted by hate speech and public hostility.

147. Defendants' extreme and outrageous conduct has caused long-lasting emotional and psychological harm to the Plaintiffs.

148. Plaintiffs seek compensatory and punitive damages for the intentional infliction of emotional distress and request injunctive relief to prevent further harm from Defendants' actions.

**<u>Count Seven</u>**
**<u>Inciting violence Against Another (Against All Defendants)</u>**

149. Plaintiffs incorporate the allegations set forth in ¶¶ 28-83 as though fully set forth herein.

150. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

151. The Defendants, through their reckless and malicious conduct, have incited violence against the Plaintiffs by spreading false and inflammatory statements about Haitian migrants.

152. Defendants repeatedly made public claims that Haitian migrants in Springfield, Ohio, were engaged in criminal acts, including the consumption of household pets, despite being informed by credible sources that these allegations were entirely untrue.

153. By broadcasting these lies on national platforms and social media, Defendants knowingly incited anger, fear, and hatred, encouraging violence against Plaintiffs.

154. Defendants' conduct was not only reckless but calculated to provoke violent reactions from the public.

155. The inflammatory nature of their statements, combined with their prominent positions of influence, caused widespread outrage and led to numerous threats of violence, including bomb threats and physical harm directed toward Haitian migrants and city officials.

156. The Plaintiffs, members of the Haitian migrant community, have been subjected to harassment, intimidation, and threats of violence as a direct result of Defendants' incitement.

157. Defendants' words, spoken with disregard for the truth, encouraged others to take hostile and dangerous actions against the Plaintiffs.

158. As a direct result of Defendants' incitement of violence, the Plaintiffs have experienced severe harm, including physical threats, emotional distress, and a disruption of their daily lives.

159. The Plaintiffs and their families live in constant fear of violent retaliation, and community spaces such as schools and businesses have been forced to close due to the ongoing threats.

160. Plaintiffs seek compensatory and punitive damages for the incitement of violence and the harm it has caused, as well as injunctive relief to prevent further incitement and to ensure the safety of the Haitian migrant community.

<u>**Count Eight**</u>
<u>**Harassment (Against All Defendants)**</u>

161. Plaintiffs incorporate the allegations set forth in ¶¶ 28-83 as though fully set forth herein.

162. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

163. Defendants, through their intentional and reckless conduct, have engaged in a pattern of harassment against the Plaintiffs, specifically targeting Haitian migrants and their community.

164. By repeatedly spreading false and defamatory statements about Haitian migrants—accusing them of engaging in criminal acts such as consuming household pets—Defendants subjected Plaintiffs to ongoing public ridicule, intimidation, and threats of violence.

165. Defendants' actions were not isolated incidents but part of a deliberate and malicious campaign to vilify the Plaintiffs.

166. Through various media channels, including televised debates, social media platforms like X (formerly Twitter), and public appearances, Defendants consistently propagated harmful lies.

167. These actions incited others to harass and threaten the Plaintiffs, resulting in significant emotional distress, disruption of daily life, and creating a hostile environment where Plaintiffs were forced to live in fear.

168. The harassment endured by the Plaintiffs has caused both psychological and emotional harm, with many members of the Haitian community experiencing anxiety, depression, and a fear for their safety. Schools, businesses, and places of worship have been impacted by the threats stemming from Defendants' conduct, leading to widespread fear among Plaintiffs and their families.

169. Plaintiffs seek compensatory and punitive damages for the harassment they have suffered, as well as injunctive relief to prevent Defendants from continuing to engage in or incite further harassment against them.

## Count Nine

### Civil Conspiracy to Violate Plaintiffs' Equal Protection Rights (Against All Defendants)

170. Plaintiffs incorporate the allegations set forth in ¶¶ 28-83 as though fully set forth herein.

171. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

172. The Defendants, including Donald Trump, JD Vance, and other co-conspirators, engaged in a conspiracy to violate the Plaintiffs' equal protection rights under the law.

173. Through their coordinated efforts, Defendants spread racially charged, false, and defamatory statements targeting Haitian migrants, particularly in Springfield, Ohio.

174. These actions were driven by racial animus and political pressure exerted by Donald Trump and his co-conspirators, aiming to incite fear, hatred, and violence against Haitian migrants, as well as to gain political advantage.

175. The conspiracy involved high-ranking officials such as JD Vance and Dave Yost, who continued to amplify these false narratives, despite being informed by local officials that the claims were baseless and dangerous.

176. Donald Trump, during a presidential debate and on various media platforms, repeated these falsehoods, claiming that Haitian immigrants were engaging in criminal acts like consuming household pets.

177. The Office of the Attorney General of Ohio, led by Defendant Yost, further facilitated the dissemination of these harmful narratives, aligning their actions with the politically motivated agenda of Defendants Trump and Vance.

178. This conspiracy directly influenced governmental offices, including the Office of Senator Vance and the Attorney General's Office of Ohio, to perpetuate further dissemination of the harmful lies that incited violence and harassment against Plaintiffs.

179. The false statements spread by the Defendants led to bomb threats, violent intimidation, and harassment of Haitian migrants, causing widespread fear and emotional distress.

180. As a result, Plaintiffs suffered significant harm, including the violation of their civil rights under the Equal Protection Clause, emotional trauma, reputational damage, and physical endangerment.

181. Plaintiffs seek compensatory and punitive damages for the injuries caused by this conspiracy, as well as injunctive relief to prevent further violations of their rights.

## Count Ten

### Civil Conspiracy to Violate Plaintiffs' Civil Rights (Against All Defendants)

182. Plaintiffs incorporate the allegations set forth in ¶¶ 28-83 as though fully set forth herein.

183. The Defendants acted in concert to infringe upon the civil rights of Haitian migrants, particularly those residing in Springfield, Ohio.

184.  Specifically, the Defendants engaged in a coordinated effort to defame and incite hostility against the Haitian community, thereby violating their constitutional rights.

185.    Donald Trump, J.D. Vance, and other Defendants, together with other unnamed co-conspirators, intentionally spread false and defamatory statements claiming that Haitian migrants were engaging in criminal activities such as stealing and consuming pets.

186. These statements were broadcast widely on social media platforms and public forums, despite the defendants being repeatedly informed by local officials that these claims were baseless.

187. The conspiracy to continue spreading these harmful lies was driven by racial animus and political motives, ultimately inciting violence, threats, and harassment against the plaintiffs.

188. This concerted effort by the defendants not only defamed the Haitian migrant community but also violated their fundamental civil rights, including their right to equal protection under the law.

189. As a result of this conspiracy, the plaintiffs faced severe emotional distress, reputational damage, and threats to their safety.

190. The plaintiffs seek compensatory and punitive damages for the harm they have suffered, as well as injunctive relief to prevent further violations of their civil rights and ensure their protection from ongoing hostility.

## COUNT 11
## Injunctive Relief

191. Plaintiff incorporates the allegations of paragraphs 28 - 83 as if stated fully herein.

192. Unless Defendants are temporarily, preliminarily, and permanently enjoined from defaming and violating Plaintiff's civil rights, Plaintiff is and will be immediately and irreparably harmed.  The members of the Class have no complete or adequate remedy at law.

193. Plaintiff as a group will suffer greater injury if an injunction is not granted than Defendants will incur if the injunction is granted.

194. The public interest and the safety of the public will be served by an injunction against the Defendants.

195. By virtue of the foregoing, the Plaintiff has demonstrated a likelihood of success on the merits and that the balancing of equity favors issuance of an injunction against Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully request judgment against the Defendants as follows:

a.   Declaring Defendants' defamatory statements caused irreparable injuries to the Plaintiffs, violate Plaintiffs' civil rights, and put Plaintiffs' lives in danger.

b.   Enjoining the Defendants, their agents, employees and successors, and all other persons in active concert from participating in, or publishing Defamatory statement against Plaintiffs:

c.   Enjoining Defendant JD Vance, a sitting United States Senator, from continuing to spread hateful lies about Haitian Immigrants eating people's cats and dogs and bringing HIV Aids to people in the United States.

d.   Defendant Dave Yost from continuing to spread hateful lies about Haitian Immigrants eating people's dogs and cats.

e.   Declaring that Defendants aided, abetted, incited, compelled or coerced the doing of any of the acts Stated herein that put the lives of Haitian Immigrants in danger.

f.   Enjoining Defendants and their agents, employees, and successors, and all other persons in active concert or participation in the violation of the civil rights of Haitian Immigrants.

g.   Enjoining defendants X and its CEO Elon Musk from continuing to publish or promote hateful and defamatory statements about Haitian Immigrants.

h.   An award of monetary damages - that Plaintiffs as a group has sustained economic damages as a result of Defendants' actions.

i.   An award of compensatory damages, including damages for emotional distress and Civil Right violation;

j.   Awarding Plaintiffs reasonable attorneys' fees, costs and expenses incurred in prosecuting this action; and

k.   Granting Plaintiffs such other further relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial on the merits by jury pursuant to Federal Rule of Civil Procedure 38.


Dated:  Miami, Florida

September 27, 2024

                                            **FRANCOIS & ASSOCIATES, P.C.**

                                            **By:**

                                            */s/ Ralph Francois*
                                            400 Hollywood Boulevard
                                            Suite 555 South
                                            Hollywood, Florida 33021
                                            Tel: 954-391-9004
                                            Fax: 509-209-8859
                                            Email: nylaw1@gmail.com